1    NOT FOR PUBLICATION

2

3

    

4

5

6

7

8    # UNITED STATES BANKRUPTCY COURT

9    # CENTRAL DISTRICT OF CALIFORNIA

10    # SAN FERNANDO VALLEY DIVISION

11

12    In re

13    APPLAUSE LLC,    Case No. SV 04-15821 MT

14    Debtor.    Chapter 11

15    **MEMORANDUM OF DECISION AND
ORDER ON DEBTOR'S MOTION FOR
16    RECONSIDERATION OF THE
MEMORANDUM OF DECISION AND
17    ORDER OVERRULING IN PART AND
SUSTAINING IN PART DEBTOR'S
18    OBJECTION TO CLAIM OF WEST COAST
LIQUIDATORS (CLAIM NO. 95)**

19

20    Date:    April 3, 2006
Time:    10:00 a.m.
21    Place:    Courtroom 302

22

23    **Background**

24        This matter relates to two proofs of claim filed in this case: (1) Claim No. 56, filed

25    by AMB Institutional Alliance Fund, II (AMB) in the amount of $1,317,054.52; and (2)

26    Claim No. 95, filed by West Coast Liquidators (WCL) in the amount of $1,084,426.92.

1   Both of these proofs of claim were timely filed prior to the January 15, 2005 deadline.

2   AMB's claim was exclusively for unpaid future rents arising from breach of the lease.

3   WCL's claim was for repayment of its prior payments on a letter of credit it posted in

4   favor of AMB to cover Debtor's nonpayment, plus miscellaneous contractual damages.

5   WCL leased a warehouse to Debtor prepetition.  Subsequently, WCL sold its

6   interest in the warehouse to AMB.  As part of this transaction, WCL posted a letter of

7   credit in favor of AMB in the amount of $950,000.  Debtor defaulted on rent payments,

8   and AMB drew against the line of credit.  The prepetition draw was $415,738.89, the

9   postpetition, prerejection draw was $114,950.67, and the postrejection draw was

10  $304,389.77.  The total draw was in the amount of $950,000.

11  The Debtor objected to both proofs of claim.  With respect to the AMB proof of

12  claim, the Debtor argued that AMB's claim should be reduced to the extent that it

13  received a portion of its damages by way of payment from the letter of credit.

14  Specifically, AMB's $1.3 million future rents claim would need to be reduced because

15  AMB received $419,310 in payments on the Debtor's future rents from the WCL letter

16  of credit.  In addition, Debtor contended that AMB either had re-leased the premises or

17  should have done so under applicable California law.  In its response, AMB agreed that

18  its claim should be reduced by the amount it received from the WCL letter of credit.  It

19  concluded that its proof of claim should be reduced to $941,058.46.  Subsequently,

20  AMB and the Debtor stipulated to a proof of claim in the amount of $800,000.

21  With respect to the WCL claim, the Debtor argued that the claim must be

22  disallowed in part and subordinated under 11 U.S.C. § 509(c).  First, the claim cannot

23  exceed $950,000, the amount WCL paid to AMB on the letter of credit.  This is because

24  the claim is based on subordination, not on any contract.  There is no contractual

25  privity.  Second, because WCL's claim is subrogated, it could not receive any

26

distribution until AMB is paid in full the amount of its claims against the Debtor's estate.

Third, the priority portion of WCL's claim would need to be reclassified as a general

unsecured claim. WCL, as a subrogee, stepped into the shoes of AMB and could only

sustain a priority claim that could have been asserted by AMB. However, AMB

expressly waived the right to assert administrative expense or priority gap period priority

claims on October 8, 2004 in the lease rejection stipulation. Moreover, any

postrejection payments under the lease are not administrative expenses of the estate.

WCL responded to the Debtor's objection by arguing that sustaining the

objections would result in a windfall to the Debtor. Since AMB was not asserting a

claim on behalf of WCL, if WCL were precluded from doing so on its own by section

509(c), then the Debtor would unfairly benefit. The debt remains due and owing and

cannot be avoided. WCL contended that if AMB waived its right to recover the amount

it received in draws, then the right to seek direct payment should vest with WCL. Thus,

the Court should determine that the $950,000 in draws against the letter of credit are a

valid debt and that, to the extent that AMB does not seek recovery of these draws, WCL

should be entitled to a claim for the full amount of these draws.

Following the filing of the above moving papers, the Debtor and AMB signed a

stipulation that would reduce AMB's claim to $800,000. In light of this fact, the Debtor

contended at the January 30, 2005 hearing that WCL could no longer assert a claim

against the state under section 509(c) since AMB has not been paid in full. In addition,

WCL holds only a general unsecured claim due to AMB's waivers in the lease rejection

stipulation. At most, WCL could only claim a $800,000 general unsecured claim

against the estate at this point. WCL's dispute is really with AMB, not the Debtor.

WCL countered that its claim is really one for contribution or reimbursement, or,

- 3 -

1   in the alternative, subrogation.  AMB has not asserted the claim that WCL is asserting,

2   and a claim should not simply vanish just because AMB failed to assert it.  The claim

3   has not been disallowed, and someone must have the right to assert it.  There is only

4   one recovery at issue; there is no double-recovery problem.  The Debtor clearly

5   benefitted from the WCL's payments through the letter of credit.  Thus, WCL should be

6   entitled assert a claim for $950,000.  Moreover, since WCL was not a party to the lease

7   rejection stipulation, this agreement does not bind WCL.  As such, WCL should also be

8   able to assert a priority claim for postpetition rent payments.[1]

9

10      This Court continued this hearing to a February 27, 2006 holding date in case,

11   after reviewing the pertinent law, the Court needed any additional factual information.

12   Concluding that no additional facts were necessary, the Court vacated the February 27,

13   2006 hearing and entered its ruling on February 23, 2006.  Relying on the plain

14   language of *In re Chateagay Corp.*, 94 F.3d 772, 779-80 (2d Cir. 1996), the Court held,

15   inter alia, that because AMB and the Debtor settled the claim amount, AMB's claim

16   constituted "payment in full" under 11 U.S.C. § 509(c).

17      On March 3, 2006, Debtor filed a Motion Pursuant to Section 502(j) for

18   Reconsideration of the Court's order.  Having read the motion and opposition thereto

19   and reviewed all of the relevant facts and law of this case, the Court finds that its prior

20   order was legally erroneous.  Accordingly, the Court's prior order is hereby VACATED.

21

22

23

---

[1]    It should be noted that WCL's counsel was never served with the
24   proposed settlement agreement between the Debtor and AMB, notwithstanding
   the fact that (1) WCL filed a request for special notice early in this case on
25   September 23, 2004, (2) the Order Establishing Notice and Service Procedures,
   entered on November 25, 2004, required service on WCL's counsel, and (3) this
26   agreement could potentially have been prejudicial to WCL's rights.

- 4 -

**Discussion**

11 U.S.C. § 509 is not the exclusive source of subrogation rights in a bankruptcy proceeding. *See In re Spiritos*, 103 B.R. 240, 244 (Bankr. C.D. Cal. 1989) Instead, "[t]here are various types of subrogation, most commonly categorized as 'conventional' or 'contractual' subrogation, 'legal' or 'equitable' subrogation, and statutory subrogation." *In re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002). Here, WCL could have a claim by way of subrogation either (1) by contract, (2) by way of equitable principles, or (3) by way of statute, such as 11 U.S.C. § 509. Under any and all of these legal theories, WCL's claim against the Debtor must be subordinated to AMB's claim.

1.    *Contractual Subrogation*

WCL holds a contractual right to subrogation by virtue of the language of the First Amendment to Purchase Agreement between it and AMB. *See* Exh. C to Motion, p. 207 ("[T]o the extent [AMB] receives any reimbursement pursuant to the Letter of Credit, [WCL] will be subrogated to any rights that [AMB] may have against the tenant under the Applause Lease to the extent of any such reimbursement made by [AMB] to [WCL]."). This First Amendment to Purchase Agreement is "governed by, construed and enforced in accordance with, the laws of the State of California." *Id.*

Under California law it is settled that the "made whole" rule applies to claims that arise by way of contractual subrogation as well as claims for reimbursement. *See Progressive West Ins. Co. v. Yolo County Superior Court*, 135 Cal.App.4th 263, 274 (Cal. App. 2005). "'It is a general equitable principle of insurance law that, *absent an agreement to the contrary*, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for [his or] her injuries, that is, has been made whole." *Id.* (citation omitted). A "contractual provision that intends to

- 5 -

1    vitiate this rule must 'clearly and specifically [give] the insurer a priority out of proceeds

2    from the tortfeasor regardless whether the insured was first made whole.'" *Id*

3    *Progressive* considered whether the following policy language vitiated the "made whole

4    rule":  (1) Progressive "is entitled to all the rights of recovery that the insured person to

5    whom payment was made has against another"; and (2) "When an insured person has

6    been paid by us under this policy and also recovers from another person, entity, or

7    organization, the amount recovered will be held by the insured person in trust for

8    [Progressive] and reimbursed to [Progressive] to the extent of our payment."  The court

9    held that because these provisions do not clearly indicate that Progressive's rights are

10   first in priority, do not explain that Progressive may seek reimbursement regardless of

11   whether the insured was made whole by his recovery from a third party, and/or do not

12   assign or transfer all rights to the insurer to the extent of the insurance company's

13   payment, the made-whole rule was not vitiated by this policy language.

14

15       The policy language in *Progressive* is analogous to the subrogation language in

16   the First Amendment.  First, the language does not clearly indicate that WCL's rights

17   are first in priority over AMB's rights.  Second, the language does not explain that WCL

18   may seek reimbursement regardless of whether AMB was made whole.  Third and

19   finally, the language does not specifically assign or transfer any rights.  Because, under

20   the above law, the "made whole" rule is not vitiated, and because, as I conclude below,

21   AMB was not made whole, WCL holds at most a $950,000 contingent claim by way of

22   contractual subrogation.  Because WCL's contractual subrogation claim would not be

23   enforceable until AMB is paid in full, and because AMB will not be paid in full, WCL's

24   claim is in effect subordinated and of no value.

25

26

2.    *Equitable Subrogation*

Under California law, a party will only have the right to equitable subrogation if five elements are met: "First, the claimant must have paid the debt owed to the lienholder in order to protect the claimant's own interest.  Second, the claimant must not have acted as a volunteer.  Third, the claimant could not have been primarily liable for the debt he paid.  Fourth, the claimant must have paid the entire debt owed to the lienholder.  And, fifth, the subrogation must not work an injustice to the rights of others." *In re Hamada,* 291 F.3d 645, 651 (9th Cir. 2002).

Applying these elements to this case, WCL does not hold a right to equitable subrogation because, as will be demonstrated below, the debt to AMB has not been paid in full.  Thus, any claim for equitable subrogation must be disallowed.

3.    *Statutory Subrogation under 11 U.S.C. § 509*

WCL is subrogated to the rights of AMB to recover unpaid rent from the Debtor under 11 U.S.C. § 509(a) ("Except as provided in subsection (b) or (c) of this section, any entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.").  "[T]here is nothing about the basic structure of the letter of credit transaction that calls for treatment different than other co-obligors in bankruptcy."[2] *In re Condor Systems, Inc.,* 296 B.R. 5, 16 (9th Cir. B.A.P. 2003).  "As with other forms of guarantee, payment by the issuer gives rise to a right of

---

[2]

Although California recognizes that applicants and issuers of letters of credit are subrogated to the rights of the beneficiary of the letter of credit, *see* Cal. Comm. Code § 5117(a) and (b), this "section does not grant any right of subrogation. It grants only the right that would exist if the person seeking subrogation 'were a secondary obligor.'" U.C.C. Comment 1 to Cal. Comm. Code § 5117.  Thus, the right to subrogation must be derived from another source.

- 7 -

1   reimbursement and subrogates the issuer to the rights of the beneficiary." *Id.* at 17.

2   Although WCL asserts that its claim is for contribution or reimbursement, rather

3   than subrogation, this distinction is immaterial here, since section 509(c) provides that

4   in either case WCL's claim would be subordinated until AMB is "paid in full." 11 U.S.C.

5   § 509(c) provides that "[t]he court shall subordinate to the claim of a creditor and for the

6   benefit of such creditor an allowed claim, by way of subrogation under this section, or

7   for reimbursement or contribution, of an entity that is liable with the debtor on, or that

8   has secured, such creditor's claim, *until such creditor's claim is paid in full*, either

9   through payments under this title or otherwise." Based on this language, the Debtor

10  contends that WCL is not entitled to any payment because AMB has not been and will

11  not be paid in full because the estate has insufficient funds to make a large distribution

12

13  on unsecured claims. Unsecured creditors are projected to only receive 12-15%.

14              A.      *Manifest Error of Law*

15  In this Court's prior order, I came to the conclusion that Section 509(c) did not

16  apply to WCL because AMB had been paid in full by virtue of its settlement with the

17  Debtor. In coming to this conclusion, the Court relied primarily on the language of *In re*

18  *Chateagay Corp.*, 94 F.3d 772, 779-80 (2d Cir. 1996) dealing with the question of

19  whether "payment in full" has been made under Section 509(c) when the primary

20  creditor settles with the debtor. Specifically, *Chateagay* stated that "acceptance of the

21  settlement . . . constitute[s] the requisite 'full payment' of the DOL claims within the

22  meaning of § 509(c)." *Id.* at 80. Although nothing in the *Chateagay* opinion itself

23  causes the Court to change its opinion on this issue, particularly since it never disclosed

24  the details of the settlement agreement in that case, further research and information

25  has led me to conclude that AMB has not been and will not be paid in full. Accordingly,

26

1  Section 509(c) applies and WCL's claim should be subordinated.

2      Notwithstanding the language of *Chateagay,* this Court concludes that settlement

3  between a primary obligor and a debtor in itself does not cause a claim to be paid in full

4  or deemed as such.  If mere settlement caused a claim to be paid in full, then Section

5  509(c) would not apply if AMB and the Debtor settled their dispute down to $800,000,

6  but Section 509(c) would apply if AMB voluntarily reduced its claim to $800,000 on its

7  own accord.  This simply does not make sense.  Instead, *Chateagay* must mean that a

8  claim is paid in full if there is a settlement between a primary obligor and a debtor *and*

9  *that the amount of the settlement is, in fact, paid.*  To the extent that *Chateagay* holds

10  otherwise, this Court declines to follow it.  The fact that AMB has not been and will not

11  be paid the full $800,000 because the estate has insufficient funds to pay unsecured

12  creditors in full is the distinguishing factor.  Because AMB has not been and will not be

13  paid in full, Section 509(c) must apply, and WCL's claim must be subordinated.

14

15      B.      *Policy Justifications*

16      This result is based on sound and well-established policy principles.  The

17  language in Section 509(c) derives from the common law "made whole" rule, discussed

18  in more detail above.  In *Restatement (Third) of Surety and Guaranty,* § 27(1), the rule

19  is described as follows: "Upon total satisfaction of the underlying obligation, the

20  secondary obligor is suborgated to all rights of the obligee with respect to the underlying

21  obligation to the extent that performance of the secondary obligation contributed to that

22  satisfaction."  *Comment b* explains the general policy behind this rule:

23

24        The purpose of subrogation is to reallocate the cost of performance from the
          secondary obligor to the principal obligor.  The mechanism by which this
25        reallocation is accomplished should not cause any disadvantage to the obligee.
          The obligee would be disadvantaged, however, if the secondary obligor were
26        subrogated to rights of the obligee before complete satisfaction of the underlying

obligation. In such a case, the rights obtained pursuant to the underlying obligation, with the result that the remaining rights of the obligee on account of the underlying obligation could be diminished. Moreover, because both the secondary obligor and the obligee would be asserting rights arising from the same undivided claim, conflicting enforcements could easily result. Thus, the secondary obligor is not entitled to subrogation to the right of the obligee until the underlying obligation is completely discharged.

In *American Surety Co. v. Sampsell*, 327 U.S. 269, 273-74 (1946), the Supreme Court discussed similar policy concerns in the insolvency context:

> The bond was intended to protect materialmen and laborers who worked on the job so that they would not have to bear the risk of Stratton's insolvency. But for his insolvency and bankruptcy these laborers and materialmen would have been able to recover from him the money due them, no matter what their rights against the surety might have been. Consequently the surety should not by claiming under subrogation or indemnity for money paid to some of the creditors for whose benefit the bond was intended, be allowed to reduce the share of the bankrupt's assets due to other creditors whom the bond also was intended to protect from insolvency. For this would tend to defeat the very purpose for which the bond was given and therefore cannot be permitted under the equitable principles governing distribution of a bankrupt's assets.

By analogy to this case, the Court could find that the letter of credit was intended to protect AMB, Debtor's landlord, so that AMB would not have to bear the risk of the Debtor's bankruptcy. But for Debtor's insolvency and bankruptcy, AMB would have been paid for the rents due, no matter what its rights against WCL might have been. Consequently, WCL should not, by claiming under subrogation or indemnity for rents paid from the letter of credit, be allowed to reduce the share of the Debtor's assets due to AMB, for whom the letter of credit was intended to protect from insolvency. This would tend to defeat the very purpose for which the letter of credit was given and therefore cannot be permitted under the equitable or statutory principles governing distribution of the Debtor's assets in this case. Put simply, AMB bargained for the letter of credit to protect itself from the credit risk the Debtor posed. WCL, making a business decision to close the sale and get the job done, agreed. It makes sense from a policy

1   standpoint that now WCL should not be permitted to dilute AMB's recovery. It

2   voluntarily assumed the risk that the letter of credit would be drawn upon.

3               C.      Other Considerations

4        Having said all of this, I have reservations with respect to the result, which derive

5   from the fact that AMB did not seek to recover any money on behalf of WCL. To the

6   extent that AMB had the right to assert a full claim (as opposed to its net damages),[3]

7   this is unfortunate and leaves matters between AMB and WCL unresolved. As the First

8   Amendment to Purchase Agreement specifically provides that AMB must reimburse

9   WCL to the extent it is reimbursed, See Exh. C to Motion, p. 206, there appears to be

10  no reason why AMB should not have asserted its full claim against Debtor to the extent

11  it was able to do so. Now, to the extent that WCL has a remedy, it will be against AMB.

12

13               D.      Amount and Characterization of Claim

14       In sum, this Court finds that WCL is entitled to a $950,000 subordinated claim.

15  WCL is specifically not limited to asserting a $800,000 claim. For one, the claim that

16  AMB is assserting is not identical to and does not overlap with the WCL claim. Thus,

17  WCL should not be specifically limited to the amount claimed by AMB. Moreover, AMB

18  did not have the power to modify the characterization or amount of the WCL claim

19  retroactively. WCL's rights vested and could no longer be modified the moment it

20  acquired them by virtue of payment through the letter of credit. "Although parties may

21

22  _____
    [3]

23       The Debtor has taken inconsistent positions on this issue. In its objection
    to AMB's claim, it asserted that the claim should be reduced to AMB's net
24  damages. Now in the Motion for Reconsideration, it asserts that WCL could
    have and should have filed a proof of claim in AMB's name to recover damages
25  for AMB and itself under 11 U.S.C. § 501(b). However, Section 501(b) provides
    WCL little solace since that provision specifically applies only if AMB does not
26  file a proof of claim. In this case, it did.

1    by agreement grant greater subrogation rights than would have been ordinarily

2    recognized in equity, a surety can acquire, by way of equitable subrogation, no greater

3    rights than were possessed by the creditor *at the time of the payment which effected*

4    *the subrogation.*" C.J.S., Subrogation, § 66 (citing *Alexander v. Young*, 65 F.2d 752,

5    757 (10th Cir. 1933 (citing numerous cases))) (emphasis added); *see also Globe &*

6    *Rutgers Fire Ins. Co. v. Hines*, 273 F. 774, 777 (2d Cir. 1921) ("The principle is a

7    general one in the law of subrogation that a surety, paying off a debt, can acquire no

8
     greater rights than the creditor had *at the time of payment*, as the surety cannot be
9
     placed in a more favorable condition than the principal.").
10
         It is unnecessary for me to reach the question of whether any part of WCL's
11
12   claim is a priority claim under 11 U.S.C. § 507(a)(1). Even if a part of it qualified as a

13   priority claim, it would still be subordinated under Section 509(c).

14   **Conclusion**

15       In conclusion, the Motion for Reconsideration is hereby GRANTED and the

16   Court's prior order is VACATED. All objections are OVERRULED. The Debtor's

17   objection to Claim 95 is sustained. Claim 95 is hereby reduced to $950,000 and shall

18   be subordinated to AMB's claim until AMB's claim is paid in full.

19

20
     **IT IS SO ORDERED.**
21

22

23
     DATED: April 3, 2006
24
                                                      MAUREEN A. TIGHE
25                                                    United States Bankruptcy Judge

26

1

## CERTIFICATE OF SERVICE BY MAIL

2         I certify that a true copy of this **ORDER** was served on ___ APR  3 2006 ___

3    to the parties listed below:

4

AMB Institutional Alliance
5    c/o Richard S. Wordes; Frank A. Conner
Wordes, Wilshin & Conner LLP
6    20151 SW Birch Street, Suite 175
Newport Beach, CA 92660

7
Shiva Delrahim
8    Peitzman, Weg & Kempinsky LLP
10100 Santa Monica Blvd., Ste. 1450
9    Los Angeles, CA 90067

10
Catherine Castaldi
11   Rus, Miliband & Smith
2600 Michelson Dr., 7th Floor
12   Irvine, CA 92612

13   Gary R. Wallace
Haight, Brown & Bonesteel LLP
14   6080 Center Dr., Ste. 800
Los Angeles, CA 90045

15
Michael Joncich
16   Credit Managers Association of S.C.
40 East Verdugo Ave.
17   Burbank, CA 91502

18
Office of the U.S. Trustee
19   128 E. Carillo St.
Santa Barbara, CA 93101

20

21

22   Dated: APR   3 2006                      *Jewell M. Williams*
                                             _____
23                                               DEPUTY CLERK

24

25

26